Shields, Justice, delivered the opinion of the court: An application is made to this court for a writ of mandamus to Nicholas Wren, clerk of the county commissioners’ court of Adams county, requiring him to make out and deliver to the relator, Andrew Redman, a certificate of his election as justice of the peace of said county. The following facts are agreed upon by the parties : 1st. That the relator was duly elected on the 7th day of August, 1843, a justice of the peace in Columbus precinct • 2d. That the Columbus precinct is situated in the county of Marquette ; 3d. That the said county of Marquette has never-yet [* 272] been organized; 4th. That if, upon a consideration of these facts, the court shall be of the opinion that the jurisdiction of Adams county extended over, the territory of Marquette, for purposes of county government, at the time of said election, then in such case a peremptory mandamus shall issue against the defendant. In granting or refusing this application, the only question presented to this court for its consideration is, did the jurisdiction of the county of Adams extend over the county of Marquette, for the purposes of county government, on the 7th day of August, 1843 ? To determine this question, reference must be had to an act entitled, “ an act to create the county of Marquette, and for other purposes therein mentioned,’'’ approved February 11th, 1843. The first section of this act provides, “ That all that part of the now county of Adams, lying east of range seven west of the fourth principal meridian, and also, sections one, twelve, thirteen, twenty-four, twenty-five, and thirty-six, of township one south of the base line, in the aforesaid range seven, be and the same is hereby created into a new county, to be called the ■ county of Marquette.” The second section directed the legal voters said county to elect county officers on the first Monday of April, 1843, with the exception of school commissioners and coroner. ■ The third section required the judges of election to return the respective poll books to Wesley D. McCann, at the town of Columbus, within five days after the election, and required the said McCann, and two other justices of the peace of said county, to open the said returns, within seven days after the election, and perform such other duties in relation to them, as are required by law of clerks of the county commissioners’ courts. The fourth section provides that as soon as county officers shall have been elected and qualified, the said county of Marquette shall be conoidered organized, that it shall form a part of the fifth judicial circuit, and have two terms of the circuit court annually. It also makes Columbus a temporary county seat. The fifth section provides 61 That all suits and prosecutions that have been commenced or hereafter may be commenced in the circuit court of Adams county, before the organization of- said county of Marquette, shall not be affected by this act, but all suits and prosecutions, so commenced as aforesaid, shall be prosecuted to final termination in the circuit court of the said county of Adams, and the officers of the said county of Adams are hereby authorized and required to issue and execute all writs that may be necessary to the prosecution of such suits, and prosecution to final ■ termination, anywhere within the limits of [* 273] the said county of Marquette.” The sixth section directs that all justices of the peace and constables elected in the county of Adams, who reside within the limits of the county of Marquette, shall hold their offices and have jurisdiction in the said county of Marquette, as though they had been originally elected in said county. The seventh section directs that Daniel Harrison, school commissioner, George Smith, county commissioner, and Jonas Grubb, coroner, who had been elected for Adams county, but reside within the limits of Marquette county, should serve out their respective terms of office in Marquette, and directs that the vacancies thus occasioned in Adams should be filled in other cases. The eighth section directs the school commissioner of Marquette to transfer the school fund to the commissioner of Adams when elected and qualified. The ninth section provides for the election of three representatives to the general assembly from Adams, two from Marquette, and a senator by the joint vote of both counties. ' The residue of the act contains regulations relative to the records of Marquette, and the adjustment of the finances between the two counties. The last section declares the act to be in force from its passage. The first section of this act detaches a portion of territory from the old county of Adams, and creates the same into a new county, called Marquette. The language used is susceptible of but one construction. The intention of the legislature is expressed in the most positive terms. It declares that a new county is absolutely created, and the only question that can arise, in determining the force and effect of this section, is a question of legislative power in relation to counties. As the constitution of this state contains no restriction, either expressed or implied, upon the action of the legislature in such a case, we hold that it has absolute control over municipal corporations, to create, change, modify, or destroy them at pleasure. This position will hardly be questioned. The following authorities, if authorities are necessary, may be adduced in support of it: Coles v. The County of Madison, Breese 120, 121 ; where this court says: “All public corporations, which are established as a part of the police of the State, are subject to legislative control and may be changed, modified, enlarged, restricted, or repealed, to suit the ever varying exigencies of the State. Counties are corporations of this character, and are consequently subject to legislative control. Were it otherwise, the object of their incorporation would be defeated. It cannot be doubted that Madison county, as a county, might be stricken out of existence, and her interest in a popular action thereby defeated.” This is a strong-case. The same doctrine will be found in Wilcox on ['*'274] Corporations 2G, §§ 11, 12 ; 2 Kent’s Com. 275.; The People v. Morrell, 21 Wend. 679; Story’s Com. on the Const. 260. The county of Marquette is therefore absolutely created by the first section. The second section confirms this view of the question. Here it will be seen that a legal duty.is imposed upon the inhabitants ofjMarquette, to elect county officers on the first Monday of April, 1843. It was not left optional with them to organize or not. It was positively enjoined upon them as a specific duty, which as citizens they were called upon to perform. The third and fourth sections would seem to dispel all doubt, if doubt could exist on the subject. The fourth section declares that when the county officers shall have been elected and qualified, the county shall be considered organized; and yet previous to organization— while it is contended the two counties were still united for the purpose of county government — the third section directs the election returns to be made to Wesley D. McCann, at Columbus, and he, with two other justices of the peace of Marquette, is substituted to act as a clerk of the county commissioners’ court of said county, in relation to said returns. Here are three dis- * tinct circumstances to be noticed: first, Wesley D. McCann, a justice of the peace of Marquette county, is directed to act instead of the clerk of the county commissioners’ court; secondly, election returns are directed to be made to him at Columbus, instead of being made to the clerk of the county commissioners’ court of the old county of Adams, at Quincy ; thirdly, the whole of this regulation must precede the organization of Marquette. Now, from these circumstances, the conclusion is irresistible, that before the organization, an absolute separation for election purposes subsisted between the two counties. The only part of the law, which qualifies or restrains the general and absolute operation of the first section, is the fifth. This extends the jurisdiction of the circuit court of Adams county over the territory of Marquette, until the organization of the latter county. Judicial jurisdiction is the exclusive subject of legislative regulation. The jurisdiction of a circuit court can be extended over a circuit or district as well as over a county. In the exercise of this acknowledged power, the legislature has extended the jurisdiction of the circuit court of Adams over Marquette, till organization. This will prevent that failure of justice, which might have otherwise occurred, in consequence of the neglect of the inhabitants to organize their county. That portion of thelaw which provides for the continuance in office of those officers, originally elected for Adams county, but residents of Marquette territory, as officers of Marquette county, for the full term of their respective offices, and which also provides for the proportion of legislative representation to which each county shall be entitled, and the adjustmentof the finances between the two counties, contemplates, unequivocally, the total and absolute separation of the two counties for those purposes. The legislature has, in many [*275] instances, left the organization of a new county to the vote of the people. In such cases an option is given the inhabitants to organize or not; but in the present case it is different. We can find no provision in this law which will even tolerate such an implication. The legislature has created a county and required the inhabitants, in express terms, to organize it. Can it be said that the neglect of the citizens, to obey the injunction of law, can defeat the law itself, and leave it a dead letter on the statute book ? To sanction such a doctrine would be to sanction anarchy, and encourage disorganization. Let this court lay down the principle, that any portion of the people can defeat the object of a public law, by disobeying its injunctions, and it would be nothing more nor less than to give judicial sanction to practical nullification. The creation of a municipal corporation depends, in no degree, upon the assent or dissent of the inhabitants of the particular locality, unless such a condition be,contained in the law of its creation. In Greenl. Ev. § 831, this doctrine is asserted. The following language is used by this perspicuous writer: “corporations, it is to be observed, are classed into public, municipal, or private corporations. The former are composed of all the inhabitants of any of the local or territorial portions into which the country is divided, in its political organization. Such are counties, towns, boroughs, local parishes, and the like. In these cases, the attribute of individuality is conferred on the entire mass ot' the inhabitants, and again is modified or taken away, at the mere will of the legislature, according to its own views of public convenience, and without any necessity for the consent of the inhabitants, though not ordinarily against it. They are termed quasi corporations, and are dependent upon the public will, the inhabitants not, in general, deriving any private or personal rights under the act of incorporation. Its office and object being, not to grant private rights, but to regulate the manner of performing-public duties.” This is the language of the author of an excellent work on evidence, and is the established doctrine on this subject. It was urged, in argument, that a corporation of this kind, becomes dissolved by the neglect of the corporators to elect officers. This principle does not apply to counties, or other public corporations. In the case of the Mayor and Commonality of Colchester v. Sealer, 3 Burr. 1866, Lord Mansfield and the other judges decided that a public corporation would not be dissolved, although its whole body of magistracy was gone, and the day of election had passed, so that they could not proceed further by their own pov/er. The corporation in such case remains dormant and quiescent. The principal argument urged on behalf of the relator was, that to give Marquette the essential constituents of a county, [i“276] it must be organized, and that until organization, the people are deprived of the right of exercising the elective franchise, unless permitted to vote with Adams county; and it was asked whether the legislature could possibly intend to do any act that could be productive of such injustice. The whole of this argument is founded in fallacy. First, the inhabitants of Marquette have all the rights, powers, and capacities possessed by the citizens of any other county in this State, and the consequences complained of spring from neglect to exercise these capacities. Secondly, it was their duty to elect officers at the time and in the manner prescribed by law. They had the capacity to do this, and failed to exercise that capacity, so that, instead of being deprived of rights, they have neglected the performance of specific duties. Men, who neglect to vote for county officers at a general election, might as well complain of being deprived of the elective franchise. In a state of society, the exercise of rights depends upon the performance of duties,-and this constitutes one of the best securities of this form of government. It must be recollected that there are other rights than those of the inhabitants of Marquette concerned in this question. The inhabitants of Adams have their rights also. They have organized in conformity to the law, and constitute a separate community, with separate interests, subject to the control and management of a distinct corporation; and for tlie citizens of Marquette to interfere in tire municipal government of Adams county would be an invasion of the corporate rights of its citizens. In a case like the present, the duty of the court is plain and obvious; our duty is not to declare what the legislature ought to have done, but what it actually has done; not to legislate, but simply declare what the law is. If a law operates oppressively, it is the province of the legislature to afford redress; but while it continues a law, it is the duty of the citizen to obey it, and of courts of justice to declare and enforce it. It has been urged in argument, that the inhabitants can still organize the county without the aid of the legislature. This point is not involved in the decision of this case, and we abstain from expressing an opinion in relation to it. It is the opinion of the court that the jurisdiction of Adams did not extend over the county of Marquette, for the purposes of county government, on the 7th day of August, 1843. The application for a writ of mandamus is therefore refused, and the relator is to pay the costs of the proceeding.